*E-Filed 7/13/05*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHILLIP J. KRONZER and<br>AUTODISC, INC., | Case No. C05-01649 HRL |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |
| v. | |
| SAMUEL A. MONTALVO,<br>ANDREA A. MONTALVO, and<br>DOES I - XX, | |
| Defendants. | |

**Introduction**

Defendants Samuel A. Montalvo ("Montalvo") and Andrea A. Montalvo ("Andrea"), both Nevada residents, move under Fed. R. Civ. P. 12(b)(2) to dismiss plaintiffs' complaint for lack of personal jurisdiction. The plaintiffs, Phillip J. Kronzer ("Kronzer") and Autodisc, Inc. ("Autodisc"), a California resident and a California corporation, sue defendants over a Nevada-based business deal, involving a Nevada corporation, that went sour in Nevada in 2004. Based on the papers submitted to the court, as well as the arguments of counsel, the court grants the motion to dismiss.

**I.   FACTS**

In the 1990's, Kronzer, Montalvo, and Andrea all lived in California. Kronzer was the owner of a business, Autodisc. Montalvo, a former employee of Autodisc, was apparently a mechanically talented person who liked to make gadgets. He also did certain secretarial work personally for Kronzer. The men were long-time friends. During their contacts, which apparently included some

1   time on the golf course, Montalvo and Kronzer would sometimes talk about an idea Montalvo had for
2   a device – which he called Autotee – that would automatically tee up a golf ball.  Montalvo had
3   devised a prototype and figured, if he could perfect the device and manufacture it, it could be
4   profitably marketed.  Kronzer expressed interest in becoming an investor and now declares that in late
5   2000, the two men entered into an "oral partnership" with respect to the device, and that he gave
6   Montalvo $25,000 as a "down payment" to be spent on its development.[1]

   Then according to plaintiff, in January 2001, the partnership was "restructured" and reduced to
writing.  Autodisc, which had put in some money, also became a partner.  Kronzer "would be" the
majority partner.  The hoped-for patent on the device would be assigned to the partnership.  This
writing was supposedly signed in San Jose.  Kronzer does not have a copy of this document.[2]

   Montalvo moved from California to Reno, Nevada in about April 2001.  Andrea, his former
wife, moved there as well in June 2001.

   There are many gaps in this story the parties tell the court, but it appears that Montalvo in
Nevada worked on developing the device and, from time to time, Kronzer would send him money for
that purpose.  Montalvo applied for a patent in April 2001.

   Instead of the "partnership" that the parties had contemplated, a corporation, Autotee, Inc.,
was set up in Nevada in January 2002.  Kronzer was named as president and a director.  Montalvo
was secretary/treasurer and a director.  Andrea was later named as the third director.

   Also in January 2002, Kronzer and Montalvo executed in Nevada a written "Agreement to
Incorporate" (Agreement) a Nevada company known (or to be known) as Autotee, Inc.  This was
prompted by advice from Kronzer's accountants that his company, Autodisc, should not be part of the
deal.  By mutual agreement, the document was backdated to January 5, 2001, in order – according to
Kronzer – to coincide with the date of the "original partnership agreement"  As the court understands
it, this agreement replaced the earlier written "partnership" agreement (which the court has not seen

---

[1] Montalvo says the money was to repay personal loans he made to Kronzer, and during this period all they did was casually talk about a possible business arrangement.

[2] Montalvo's declarations avoid any mention of this purported writing.

2

and defendant has not acknowledged), just a the first writing – if it existed – had replaced the claimed "oral" agreement (which defendant, in any event, denies).

The Agreement says that Autotee will be the entity that will manufacture and market the automatic teeing device. It "anticipated" that the production of the "first demo units" would begin by January 2002 (it was already January 2002 at the time of signing), and that full production "shall commence by January 2003." Kronzer agreed to supply "all of the working capital required to reach the full production phase" in an amount that "may reach the sum of $250,000."[3] Kronzer would own 51% of the stock. Montalvo, who would become Manufacturing Manager, would receive 49% "in consideration of his invention." The requirement that "all patents" be assigned by Montalvo to the corporation "at the time of incorporation" was impossible of performance just then, since it had not yet been issued.[4]

Although Kronzer maintains that at all times he has been a resident of California, he had substantial contacts with Nevada throughout the relevant time period. He owned a home in Reno. He received mail there. He bought a car, apparently registered it in Nevada, and kept it at his Reno home. He used his Reno home to meet with Montalvo to discuss business. His Reno address appears on the Nevada incorporation documents, on the Autotee business license application, and on his Autotee stock certificate. It was also the address that the IRS used to communicated with Autotee about tax deposit requirements.

Montalvo applied for a Reno business license on behalf of Autotee in October 2002 and rented shop space in that city in May 2003. At some point, Andrea was hired as the Autotee office manager. Presumably, throughout 2002, 2003, and into 2004, Montalvo worked on perfecting the device, planning how to manufacture it, and obtaining molds and other necessary material or equipment. Kronzer, apparently, continued to provide the funding.

Then, according to Kronzer, Montalvo told him in mid-2004 that the patent had been issued the year before but that it still had not been assigned to the corporation. At this point, Kronzer, who had footed the bill all along, began to "doubt Montalvo's good faith." However, Montalvo then gave

---

[3] Kronzer's complaint alleges that he put $500,000 into Autotee.

[4] The patent issued in July 2003.

3

him "assurances" that the patent would be assigned (and that he would assist in fund-raising and marketing) if Kronzer would continue to fund the project. According to Kronzer, he accepted the assurances and continued to provide funding. Continued, that is, for a few months more. At that point he realized that Montalvo was not "cooperat[ing]."[5] Kronzer stopped putting in his own money and instead went looking for outside investors.

From mid-2004 until March 2005, there is another big gap in the story. It picks up again as of March 2005 when, according to Kronzer's declaration, he learned that without any notice to him, Montalvo had "dissolved" the corporation![6]

Kronzer and his company, Autodisc, bring the following claims against the defendants:

1) Fraud and deceit - based on the proposition that Montalvo never intended to perform his written agreement to assign the patent or to live up to his verbal reaffirmation of that promise;

2) California securities fraud - based on failure to assign the patent;

3) Conversion - based on Montalvo's surreptitious dissolution of the corporation; and

4) An accounting - of the dissolution proceeds.

## II.  LEGAL STANDARD

A party seeking to invoke the jurisdiction of the federal court has the burden of establishing that such jurisdiction exists. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court is located is applicable. California Code of Civil Procedure section 410.10, permits the exercise of jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Basically, due process requires that a court only exercise jurisdiction over a nonresident defendant if that defendant has "minimum contacts" with the forum state such that maintenance of the suit does not offend traditional notions of fair play and

---

[5] The court wonders whether Montalvo finally did assign the patent, or whether his continued failure to do so was part of the reason Kronzer says he was not cooperating. Curiously, none of the declarations before the court say one way or the other.

[6] No one suggests how Montalvo might have accomplished that without the knowledge or support of the corporation's 51% owner.

4

substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Aanestad v. Beech Aircraft Corp.*, 521 F.2d 1298, 1300 (9th Cir. 1974).

There are two types of personal jurisdiction: general and specific. If the nonresident defendant's activities with in the state are "substantial" or "continuous and systematic," there is a sufficient relationship between the defendant and the forum state to support jurisdiction even if the claim is unrelated to the defendant's forum activities. If that test is not met, then specific jurisdiction may exist where there is a sufficient relationship between defendant's contacts with the forum state and the claims at issue. *Data Disc*, 557 F.2d at 1287. In assessing the sufficiency of a defendant's contacts with the forum state for specific jurisdiction purposes, the court should look at: (1) whether the non-resident defendant did some act or consummated some transaction by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) whether the claim arises out of defendant's forum-related activities; and (3) whether the exercise of jurisdiction would be reasonable under the circumstances. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990).

### III.   DISCUSSION

#### A.   Personal Jurisdiction Over Andrea A. Montalvo

In her declaration, Andrea reports that she has lived in Reno since June 2001 and owns no real or personal property in California. She conducts no business in California. Years ago, she worked for Autodisc, and she is the former wife of the co-defendant. She says she became a director of Autotee at Kronzer's request. Montalvo paid her an hourly wage to be Autotee's office manager. She never held any stock in Autotee.

More significantly, Kronzer does not even claim that Andrea made any agreements with him, oral or written, or that she was part of the deal he had with Montalvo. He does not point to evidence indicating that she had any actual involvement in the actions and inactions that form the basis of plaintiffs' claims here. At the time of the oral argument, the court asked plaintiff's counsel to describe the facts that justified asserting personal jurisdiction over Andrea, either general or specific, in California. He could not suggest any, weakly opining that discovery may reveal some.

1    Accordingly, as to Andrea A. Montalvo, the motion to dismiss for lack of personal jurisdiction
2 should be granted.

### B.    Personal Jurisdiction Over Samuel Montalvo

Kronzer and Montalvo disagree as to whether or not their original deal was entered into in California. But, there is no dispute that the ultimate, documented agreement (which replaced whatever had gone before) was written in Nevada, executed in Nevada, performed in Nevada, and – allegedly – breached in Nevada. The corporation that was the vehicle for producing and marketing the Autotee device was incorporated in Nevada, located in Nevada, and did business in Nevada.

Nevada is the nexus of the dispute. The written promise, which Kronzer says Montalvo never intended to keep, was made in Nevada. The oral reaffirmation of that promise was made in Nevada to Kronzer in Nevada. The dissolution occurred in Nevada. The conversion of corporate assets on account of the unauthorized dissolution, if it occurred, occurred in Nevada. The claim for an accounting of the assets received in the dissolution involved, again, conduct that occurred in Nevada.

Yes, according to Kronzer's testimony, there was a predecessor oral agreement entered in California and maybe a written one as well, but there is no dispute that the operative agreement which included the key term about assignment of the patent – as well as the later specific and allegedly fraudulent oral reaffirmation of that promise – occurred in Nevada. In short, while there are some – disputed – antecedents of the business arrangements between Kronzer and Montalvo in California, almost all of the facts and events that underlay plaintiff's claims are centered in Nevada. And, while Kronzer in California did send money to Montalvo in Nevada, those actions appear to be unilateral on Kronzer's part and not suggestive or reflective of Montalvo "purposefully availing" himself of conducting activities in a California forum. For example, there is no claim that Montalvo used the funds for anything other than their intended purpose.

Montalvo's declaration states that he owns no real or personal property in California and has not conduced any business there. The only post-April 2001 connection he has to California is with Kronzer on account of the Autotee project. There is no basis for general jurisdiction.

As for the possibility of specific jurisdiction, the court acknowledges that plaintiff's burden of proof at this stage of the litigation is not heavy, but it is not trivial either. The court believes that

"minimum contacts" does not mean minimal or inconsequential contacts. The plaintiff must satisfy the court that Montalvo purposefully availed himself of a California forum, that at least one claim against him arises out of that "availment," and that it would be reasonable to make Montalvo defend in California. To reach that result here the court would have to stretch beyond the Constitutional bounds requiring minimum contacts, and the court declines to do so. The motion to dismiss should be granted.

## Conclusion

For the reasons discussed above, the motion of Samuel A. Montalvo and Andrea A. Montalvo to dismiss for lack of personal jurisdiction is granted.

**IT IS SO ORDERED.**

Dated: 7/12/05                                                       /s/ Howard R. Lloyd
                                                                 HOWARD R. LLOYD
                                                                 UNITED STATES MAGISTRATE JUDGE

1  THIS IS TO CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

2  Thomas Easton     tom.easton@comcast.net

3  Terry John Thomas    t2t@nvlitigators.com

4
Dated: 7/13/05
5
                                         /s/ RNR
6                            Chambers of Magistrate Judge Howard R. Lloyd

**United States District Court**
For the Northern District of California